# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EUGENE EASTERLING,<br>　　　　Plaintiff,<br><br>　　　　v.<br><br>CAROLYN COLVIN,<br>Acting Commissioner of Social Security,<br>　　　　Defendant. | 2:13-cv-01357 |

## MEMORANDUM OPINION

**I.　Introduction**

Plaintiff, Eugene Easterling, brought this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final determination of the Commissioner of Social Security ("Commissioner"), which denied his application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 401-403; 1381-1383(f). The parties have filed cross-motions for summary judgment, with briefs in support (ECF Nos. 12, 16). For the following reasons, the Commissioner's motion will be **GRANTED**, and Plaintiff's motion will be **DENIED**.

**II.　Background**

Plaintiff was born on May 8, 1972. (R. 40). After graduating from high school, Plaintiff worked as a welder, lead burner, and machine operator. (R. 40). He last worked in 2008, and after losing (or quitting) his job at a steel products plant, he sought new employment and claimed unemployment compensation benefits. (R. 41). However, his efforts to find a new job were unsuccessful, and he has not engaged in substantial gainful employment ("SGA") since May 22, 2008, his alleged onset date. (R. 18).

A.      **Medical Evidence**

Plaintiff alleges disability due to several impairments: kidney stones, chronic low back pain, anxiety, depression, panic attacks, and stress headaches.

1.      **Physical Impairments**

Plaintiff has a history of kidney stones. Plaintiff testified that the kidney stones "come and go. They could be anywhere from one a year to every two years, couple times a year." (R. 54). He described them as "[v]ery, very painful." (R. 54). He twice underwent surgery to remove the stones, in 2008 and May 2010, but has also successfully passed stones – including the most recent one in February 2011 – without the assistance of an operation. (ECF No. 8-2, at 21). At the time of the hearing, he had not experienced any other issues related to his kidney stones since February 2011.

Plaintiff began seeing Dr. Patrick Shaughnessy for his back pain in 2006. (R. 243). In July of that year, he rated his pain at 4 out of 10 on the pain scale and reported that it typically ranged between 2 and 6 out of 10. (R. 423). Dr. Shaughnessy noted that Plaintiff was not undergoing therapy at the time and continued to work full time. (R. 423). The results of a physical examination were largely unremarkable, as Plaintiff displayed good range of motion, albeit with some discomfort. (R. 423). Dr. Shaughnessy diagnosed Plaintiff with chronic thoracic and right scapular pain resulting from an "old work injury." (R. 423). He continued Plaintiff on his then-current medications (i.e., Vicoprofen, Mobic, Ultracet, and Flexeril) and also started him on Ultram. (R. 423). Plaintiff continued to receive routine treatment from Dr. Shaughnessy throughout the remainder of 2006 until September 2007.

After a hiatus in treatment in the latter part of 2007 and the early part of 2008, Plaintiff returned to Dr. Shaughnessy's office in May 2008, again complaining of mid-to-low back pain.

(R. 274). He reported having "good days and bad days" and complained that his back "went out" several weeks before this office visit while he was performing yard work. (R. 274). Dr. Shaughnessy noted that Plaintiff was still not undergoing any treatment, though he did do "his stretches and activities of daily living at home for exercise." (R. 274). He also continued to take Vicoprofen and Ultram for the pain. (R. 274). Upon examination, Plaintiff was able to flex forward 75 degrees, with some stiffness in the mid-thoracic and at the thoracolumbar junction. (R. 274). He also displayed decreased lumbar motion and decreased lumbar extension. (R. 274). Dr. Shaughnessy reaffirmed his previous diagnoses of chronic lumbar and lower thoracic pain caused by a work injury, and also assessed Plaintiff with chronic pain syndrome. (R. 274).

Plaintiff was seen by his primary care practitioner, Lori Leipheimer, C.R.N.P., on September 8, 2008, complaining of lower back pain. (R. 275). At the time, Plaintiff had been pain free for some time, but had re-injured his back while at work and then re-injured it again while doing yard work. (R. 275). Ms. Leipheimer noted that Plaintiff had recently quit his job because he was apparently missing too much time for "personal and medical reasons." (R. 275).

On September 25, 2008, Plaintiff followed up with Dr. Shaughnessy, at which time he reported that his pain had remained the same since his last appointment in May. (R. 273). According to Dr. Shaughnessy, Plaintiff again reported having "good and bad days." (R. 273). Moreover, prior to the appointment, Plaintiff had seen an uptick in his activity level, which caused the pain to increase a "little bit." (R. 274). After examining Plaintiff, Dr. Shaughnessy noted that he could flex forward from the lumbar nicely – "almost full range." (R. 273). However, he had some mild pain when arising from flexion and also displayed pain on extension. (R. 274).

Plaintiff was next seen by Dr. Shaughnessy in late January 2009, at which time he

3

complained that he had seen an increase in pain in his lower back, which he attributed to the cold weather. (R. 284). He explained that he had slipped and fallen a few weeks before the appointment, twisting his back. (R. 284). The pain from the fall lasted a few days before dissipating. (R. 284). At the time, Plaintiff rated his pain at a 3 out of 10 and explained that it ranged from a 2 to a 7/8 out of 10. (R. 284). Moreover, he reported that his activity level was the same, and he continued to take Ultram and Vicoprofen to deal with the pain. (R. 284). Upon exam, Plaintiff could flex forward "nicely" but had trouble extending at the lumbosacral junction. (R. 284). After examining Plaintiff, Dr. Shaughnessy noted that he reviewed the stretching exercises with Plaintiff and remarked that he could be stretching more. (R. 284).

Plaintiff saw Dr. Shaughnessy three more times in 2009, and his condition remained stable. (R. 282). In September, Dr. Shaughnessy noted that Plaintiff's activity level had improved, and although he was not working full time, he was doing odd jobs and looking for a full-time job. (R. 282). By December, Plaintiff had seen an increase in pain, which he attributed to the cold temperatures. (R. 281). However, he reported that that medication made the pain tolerable. (R. 281).

Plaintiff continued to see Dr. Shaughnessy throughout 2010, still complaining of mild-to-moderate pain, which was relieved by his medications. (R. 356, 355). His activity level also remained the same. After an October 10, 2010, appointment, Dr. Shaughnessy noted that Plaintiff had been out of work for nearly two years and he "suspect[ed] he is not going to be able to go back to work. He certainly cannot work full time at this point." (R. 354). After this appointment, Dr. Shaughnessy completed a medical source statement that indicated that Plaintiff could frequently lift/carry 2-3 pounds, occasionally lift 10 pounds and frequently carry 10 pounds, occasionally lift 20 pounds, never carry 20 pounds, and never lift/carry 25-100 pounds.

(R. 352). He also opined that Plaintiff could stand and walk for up to 3 hours during a workday, sit for 4 hours during a workday, push and pull occasionally, and occasionally engage in all postural activities except climbing. (R. 352). In addition, Dr. Shaughnessy opined that Plaintiff had limited reaching capabilities and should not be around heights or moving machinery because of his medications. (R. 253).

About two weeks later, Mary Ellen Wyszomierski, M.D., a state agency consultant, reviewed Plaintiff's file and completed a physical residual functional capacity ("RFC") assessment form. (R. 357). Dr. Wyszomierski opined that Plaintiff could occasionally lift/carry 20 pounds, frequently lift/carry 10 pounds, stand/walk for about 6 hours in a workday, sit for about 6 hours in a workday, and occasionally engage in all postural activities. (R. 358-59).

Plaintiff saw Dr. Shaughnessy four times in 2011. Most recently, in September 2011 Dr. Shaughnessy performed an MRI that showed mild bulging in the L4-L5 and L5-S1 discs without focal herniation and mild degeneration. (R. 439-44). That same month, Dr. Shaughnessy completed a medical questionnaire, in which he opined that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently and could stand/walk and sit for a total of six hours each in one-hour intervals without interruption. (R. 437). However, Dr. Shaughnessy also found that Plaintiff did not need to lie down unpredictably during the day for pain relief, but did note that he would likely miss four days of work a month due to his medical condition and would not be capable of working on a regular and continuing basis. (R. 438).

### 2. Mental Health Impairments

Plaintiff complained of anxiety and depression several times throughout his treatment with Ms. Leipheimer, who initially prescribed him with Prozac. (R. 275). These conditions seemed to have come to a head in July 2010, when Plaintiff presented to Ms. Leipheimer with

5

"multiple problems." (R. 345). For one thing, he reported that he had been out of work for some time and unsuccessfully looking for a job. (R. 345). This caused him anxiety and kept him awake at night, "ruminating about all his current problems." (R. 345). He was also "[v]ery depressed, but denie[d] suicidal ideation." (R. 345). Ms. Leipheimer diagnosed Plaintiff with severe anxiety and depression, continued him on Prozac, and prescribed him Xanax. (R. 345). She also referred him to a psychiatrist. (R. 345).

On August 16, 2010, Plaintiff underwent a psychological assessment. (R. 342). At the time, he complained of, inter alia, anxiety, depression, increased stress in his life due to his unemployment, and money problems. (R. 342). He also described feeling "useless" and "failing at everything." (R. 342). He reported, however, that he got some relief from his medications. (R. 342). A mental status examination was unremarkable, and Plaintiff was diagnosed with major depressive disorder and assessed a global assessment of functioning ("GAF) of 60. (R. 344). After that initial evaluation, Plaintiff started to see psychiatrist, Harshad Patel, M.D., for medication management on a monthly basis. (R. 392-401).

At an August 25, 2010, appointment with Ms. Leipheimer, Plaintiff reported that, in addition to his continued back pain, he still experienced anxiety and depression. (R. 341). He explained that he had recently been taken off Prozac, but had been started on Effexor and Klonopin and he seemed to be doing well on these medications. (R. 341). During the appointment, Ms. Leipheimer completed medical assistance papers for Plaintiff and opined that he was unable to work "because of his present problems and really is distraught about going on medical assistance. . . he is so young and willing to work." (R. 341).

In October 2010, Dr. Arlene Rattan, Ph.D., a psychological consultant for the state, reviewed Plaintiff's file and completed a mental RFC assessment form. (R. 364). Dr. Rattan

6

opined that Plaintiff could meet the mental demands of work on a sustained basis despite his mental impairments. (R. 366). Specifically, Dr. Rattan found that Plaintiff was not significantly limited in the areas of understanding and remembering; not significantly limited to moderately limited in the areas of sustaining concentration and persistence; not significantly limited to moderately limited in the area of social interaction; and not significantly limited to moderately limited in the area of adaption. (R. 364-65).

Dr. Fred Gallo, Ph.D., performed a psychological evaluation of Plaintiff at the behest of the Mercer County Assistance Office in January 2011. (R. 381-84). Dr. Gallo diagnosed him with Major Depressive Disorder, Generalized Anxiety Disorder, and Personality Disorder with paranoid features. (R. 383). He also assessed a GAF score in the range of 45-50 and opined that Plaintiff had been unable to maintain competitive employment for the past couple of years because of physical and psychiatric problems. (R. 383-84).

In August 2011, Dr. Patel completed a medical questionnaire in relation to Plaintiff's disability claim. (R. 425). Dr. Patel noted that Plaintiff suffered from depression, anxiety, anhedonia, disturbed sleep, decreased stress tolerance, temper control, and easy frustration. (R. 425). Based on his review of Plaintiff's chart and his treatment notes, Dr. Patel opined that Plaintiff could work, but only part time (20 hours per week) in a job with low responsibility because he has "poor focus and concentration" and "doesn't handle stress well." (R. 426).

### B. Procedural History

Plaintiff protectively filed applications for DIB and SSI on September 17, 2010, in which he alleged disability as of May 22, 2008. After Plaintiff's claims were initially denied, he requested an administrative hearing, which was held on November 21, 2011, before Administrative Law Judge ("ALJ") John J. Porter. Plaintiff was represented by a non-attorney

representative and testified at the hearing, as did an impartial vocational expert ("VE").

On January 13, 2012, the ALJ rendered an unfavorable decision to Plaintiff, in which she found that Plaintiff retained the ability to perform light work with the following additional limitations:

> The claimant must be afforded the option to sit or stand, changing positions at a maximum frequency of every thirty minutes. The claimant is limited to no more than occasional postural maneuvers, and should avoid concentrated exposure to extreme cold, wetness, vibration, machinery, heights, and like hazards. He is further limited to simple, routine and repetitive work that is not performed in a fast-paced production environment and involves only simple work decisions and occasional interaction with others.

(R. 20-21). The VE testified that given all of these factors, Plaintiff would not be able to perform his past relevant work as a lead burner and machine operator; however, he would still be able to perform the requirements of the following representative occupations: packing line worker (80,000 jobs), office helper (85,000 jobs), and mail clerk, excluding those that work for the U.S. Postal Service (110,000). (R. 29). In reliance on the VE's testimony, the ALJ held that Plaintiff was "not disabled" within the meaning of the Act and denied his claims for benefits. (R. 30).

The ALJ's decision became the final decision of the Commissioner on June 18, 2013, when the Appeals Council denied Plaintiff's request to review the decision of the ALJ. Therefore, Plaintiff filed a Complaint in this Court on September 18, 2013, and the Commissioner filed her Answer on February 5, 2014. Both parties have now filed cross motions for summary judgment.

### III. Legal Analysis

#### A. Standard of Review

The Act limits judicial review of disability claims to the Commissioner's final decision. 42 U.S.C. §§ 405(g), 1383(c)(3). If the Commissioner's finding is supported by substantial

evidence, it is conclusive and must be affirmed by the Court. 42 U.S.C. § 405(g); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). The United States Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389 (1971). It consists of more than a scintilla of evidence, but less than a preponderance of the evidence. *Thomas v. Comm'r of Soc. Sec.*, 625 F.3d 798 (3d Cir. 2010).

In situations where a claimant files concurrent applications for SSI and DIB, courts have consistently addressed the issue of a claimant's disability in terms of meeting a single disability standard under the Act. *See Burns v. Barnhart*, 312 F.3d 113, 119 n.1 (3d Cir. 2002) (citations omitted). ("This test [whether a person is disabled for purposes of qualifying for SSI] is the same as that for determining whether a person is disabled for purposes of receiving social security disability benefits [DIB].; *Sullivan v. Zebley*, 493 U.S. 521, 525 n.3 (1990) (same); *Morales v. Apfel*, 225 F.3d 310, 315-16 (3d Cir. 2000) (same).

When resolving the issue of whether an adult claimant is "disabled," the Commissioner utilizes a five-step sequential evaluation. 20 C.F.R. §§ 404.1520, 416.920. This process requires the Commissioner to consider, in sequence, whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to his or her past relevant work, and (5) if not, whether he or she can perform other work. 42 U.S.C. § 404.1520; *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545-46 (3d Cir. 2003) (quoting *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118-19 (3d Cir. 2000)).

To qualify for disability benefits under the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period." *Fargnoli v. Massanari*, 247

F.3d 34, 38-39 (3d Cir. 2001) (internal citation omitted); 42 U.S.C. § 423 (d)(1). This may be done in two ways: (1) by introducing medical evidence that the claimant is disabled per se because he or she suffers from one or more of a number of serious impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1, *see Heckler v. Campbell*, 461 U.S. 458 (1983); *Newell*, 347 F.3d at 545-46; *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004); or, (2) in the event that claimant suffers from a less severe impairment, by demonstrating that he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ." *Campbell*, 461 U.S. at 461 (citing 42 U.S.C. § 423 (d)(2)(A)).

To prove disability under the second method, a claimant must first demonstrate the existence of a medically determinable disability that precludes him from returning to his former job. *Newell*, 347 F.3d at 545-46; *Jones*, 364 F.3d at 503. Once it is shown that claimant is unable to resume his previous employment, the burden shifts to the Commissioner to prove that, given claimant's mental or physical limitations, age, education and work experience, he is able to perform SGA in jobs available in the national economy. *Rutherford*, 399 F.3d at 551; *Newell*, 347 F.3d at 546; *Jones*, 364 F.3d at 503; *Burns v. Barnhart*, 312 F.3d 113, 119 (3d Cir. 2002).

### B. Discussion

As set forth in the Act and applicable case law, this Court may not undertake a de novo review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Med. Cntr. v. Heckler*, 806 F.2d 1185, 1190 (3rd Cir. 1986), *cert. denied.*, 482 U.S. 905 (1987). The Court must simply review the findings and conclusions of the ALJ to determine whether they are supported by substantial evidence. 42 U.S.C. § 405(g); *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). Plaintiff raises two arguments in support of his motion for summary judgment. First, he objects to the ALJ's decision to discredit his subjective complaints

of pain and other symptoms. Second, he argues that the ALJ erred in declining to incorporate all of his alleged impairments into his RFC assessment.[1] These arguments will be discussed seriatim.

### 1. The ALJ Did Not Err in Assessing Plaintiff's Credibility.

Plaintiff alleges that the "ALJ failed to follow Agency regulations, Agency rulings and this Circuit's law in rendering his credibility determination in failing to determine whether Plaintiff's symptoms could reasonably be expected to result from a demonstrated physical impairment . . . ." Pl.'s Br. in Supp. of Mot. for Summ. J. at 9 (ECF No. 16). Plaintiff also argues that "the ALJ failed to properly explain his credibility finding and instead made general, ambiguous statements about Plaintiff's credibility."[2] *Id.* After a careful study of both the record

---

1. Plaintiff also argues that the ALJ asked a hypothetical question to the VE that failed to accurately portray all of his limitations. As the Court of Appeals has explained, "objections to the adequacy of hypothetical questions posed to a vocational expert often boil down to attacks on the RFC assessment itself." *Rutherford*, 399 F.3d at 554 n.8. Such is the case where, as here, a plaintiff argues that the VE's testimony cannot be relied upon "because the ALJ failed to recognize credibly established limitations during the RFC assessment and so did not convey those limitations to the vocational expert." *Id.* Accordingly, the Court will construe Plaintiff's argument as a challenge to the ALJ's RFC assessment and will not separately address Plaintiff's challenge to the ALJ's reliance on the VE's testimony. Insofar as the ALJ did not err in that respect, he was permitted to rely on the VE's testimony in response to the hypothetical question that he posed.

2. Plaintiff's argument is couched as an attack on the ALJ's credibility finding. In reality, however, Plaintiff's major objection seems to be that the ALJ found that Plaintiff's impairments did not completely preclude him from working. Indeed, rather than documenting particular complaints that the ALJ allegedly ignored or specific pieces of evidence suggesting that his impairments cause functional limitations greater than those recognized by the ALJ, he has simply copy and pasted the portion of his brief documenting his treatment history for his various alleged impairments and argued that his medical records "provide clear evidence that [his] impairments cause chronic pain despite her [sic] on-going treatment." Pl.'s Br. in Supp. of Mot. for Summ. J. at 11 (ECF No. 16). This is hardly a persuasive or effective manner of arguing since it ignores that the "[m]ere presence of a disease or impairment is not enough" to establish that a claimant is "disabled." *Walker v. Barnhart*, 172 F. App'x 423, 426 (3d Cir. 2006). Instead, "[a] claimant must show that his disease or impairment caused functional limitations that precluded him from engaging in any substantial gainful activity." *Id.* Plaintiff has not even attempted to do this but,

as a whole and the ALJ's decision, the Court cannot agree with these contentions.

"An ALJ must give serious consideration to a claimant's subjective complaints of pain, even where those complaints are not supported by objective evidence." *Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir. 1993). "Where a medical impairment that could reasonably cause the alleged symptoms exists, the ALJ must evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work." *Bair v. Comm'r of Soc. Sec.*, No. 09-05, 2010 WL 3222123, at *9 (W.D. Pa. July 23, 2010). "This obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it." *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) (citing 20 C.F.R. § 404.1529(c)). If the ALJ does not find a claimant's subjective complaints to be credible, he may reject them, partially or fully, in favor of other medical evidence in the record, as long he provides a reasonable explanation as to why he is doing so. *Schaudeck*, 181 F.3d at 433; *Gupta v. Astrue*, No. 09–1055, 2010 WL 2835719, at *15 (W.D. Pa. July 16, 2010). As the Court of Appeals has explained,

> when assessing a claimant's credibility "[i]n instances in which the adjudicator has observed the individual, the adjudicator is not free to accept or reject that individual's complaints solely on the basis of such personal observations. Rather, in all cases in which pain or other symptoms are alleged, the determination or decision rationale must contain a thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations. The rationale must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the individual's ability to work."

*Schaudeck*, 181 F.3d at 433 (quoting SSR 95-5P, 1995 WL 670415, at *2 (SSA Oct. 31, 1995)). As long as the ALJ substantiates his credibility finding with substantial evidence, it will not be disturbed. *Van Horn v. Schweiker*, 717 F.2d 871, 873-74 (3d Cir. 1983).

---

again, has simply copied verbatim his recitation of the records documenting the treatment he received for his alleged impairments.

The ALJ in this case fully complied with these requirements. Contrary to Plaintiff's argument, the ALJ expressly found that Plaintiff had medically determinable impairments that could reasonably be expected to cause his alleged symptoms. (R. 22). Nevertheless, based on his review of the factors in S.S.R. 96-7p, he found that Plaintiff's subjective complaints were not entirely credible. (R. 22). This decision is supported by substantial evidence.

First, while Plaintiff claims that the ALJ overlooked the fact that he has a "painful kidney disorder that has led to several surgeries and hospitals," the ALJ actually did no such thing. Rather, he explicitly considered and discussed all of the medical records documenting Plaintiff's history of kidney stones and Plaintiff's own testimony regarding his kidney stones. After doing so, he accurately noted that Plaintiff required surgery to remove the stones "on average once every two years" and only one such surgery took place within the relevant time period. (R. 22). As the ALJ also observed, Plaintiff was able to pass his most recent kidney stone without surgery and, thereafter, had not experienced any problems that would suggest this condition was disabling. (R. 22). Plaintiff has not offered anything – not a citation to a specific portion of his own testimony or a record from one of his treating sources – to establish the contrary, i.e., that the pain from his kidney stones was so serious that it caused functional limitations greater than those recognized in the RFC assessment.

Second, Plaintiff claims that the ALJ improperly rejected his complaints of disabling back pain, but again, the ALJ did no such thing. To the contrary, the ALJ recounted Plaintiff's complaints of back pain and determined that they were not consistent with the objective evidence of record and Plaintiff's activities of daily living. (R. 28). Specifically, he explained that Plaintiff's testimony as to his limited ability to sit, stand, and walk were "wholly unsupported by the records from Dr. Shaughnessy, who has recommended no more than conservative treatment

13

for his allegedly disabling pain, including medication and occasional manipulative treatment." (R. 28). Likewise, the ALJ supported his credibility finding by explaining that Plaintiff performed a number of activities, e.g. winterizing his home, that were inconsistent with his complaints of disabling pain. (R. 24). These are all reasonable conclusions, based on the ALJ's thorough review of the evidence, and the Court will not disturb them. Moreover, the Court notes that the ALJ adequately took into account Plaintiff's complaints of back and abdominal pain by limiting him to light work and affording him a sit/stand option. None of Plaintiff's subjective complaints suggest that he required greater restrictions. In view of that, Plaintiff's first argument does not provide a basis for remand.

### 2. The ALJ's RFC Assessment Properly Accounted for All of Plaintiff's Credibly Established Impairments.

Plaintiff next argues that the ALJ's RFC assessment is not supported by substantial evidence because it fails to accommodate "all of Plaintiff's limitations." Pl.'s Br. in Supp. of Mot. for Summ. J. at 11 (ECF No. 16). Rather than identifying specific pieces of evidence in the record to bolster this position, however, Plaintiff merely copies and pastes his recitation of the medical evidence in the record – the third time this recitation appears verbatim in his brief – and then baldly announces that his "impairments are documented in the record and would cause greater limitations than the ALJ determined." *Id.* at 14. Needless to say, this argument is unpersuasive.

An RFC assessment is an administrative finding reserved exclusively for the Commissioner, not simply a medical assessment. *See Arlow v. Colvin*, No. 13-99, 2014 WL 1317606, at *5 (W.D. Pa. Mar. 28, 2014) (citing 20 C.F.R. §§ 404.1527(e), 416.927(e)). It reflects "what [a Plaintiff] can still do despite [his] limitations." 20 C.F.R. § 416.945(a). In making an RFC finding, "the ALJ must consider all evidence before him." *Burnett*, 220 F.3d at

121. That is not to say, however, that an ALJ needs to incorporate "every impairment *alleged* by a claimant" into his RFC finding. *Rutherford*, 399 F.3d at 554 (emphasis in original). Rather, he need only accommodate those that are "credibly established" by the evidence. *Id.* (citing *Plummer*, 186 F.3d at 431).

In making his RFC finding, the ALJ discussed the medical evidence in the record at length and in great detail and then appropriately determined the extent to which Plaintiff's alleged impairments were credibly established and the extent to which they would prevent him from working. (R. 21-29). As the ALJ explained, Plaintiff received moderate treatment for his kidney stones and did not report experiencing any problems after February 2011, when he passed his last stone. As for his alleged back pain, the ALJ accurately found that although Plaintiff experienced mild-to-moderate symptoms, his symptoms remained stable throughout his regular office visits with Dr. Shaughnessy and were mostly controlled by Plaintiff's pain medication. The ALJ also found that Plaintiff continued to perform a number of daily activities that were inconsistent with a finding of "disabled." Finally, with regard to Plaintiff's alleged mental health impairments, the ALJ considered all of the records of Plaintiff's treatment with Dr. Patel before concluding that Plaintiff had responded well to treatment and had not displayed any significant abnormalities during mental status examinations. All of this evidence supported the ALJ's conclusion that Plaintiff could perform light work with the exertional and non-exertional limitations identified in his RFC assessment.

The ALJ also thoroughly discussed all of the opinion evidence in the record and complied with the applicable regulations and Social Security Rulings by discussing the amount of weight he was assigning each opinion and setting forth specific reasons for rejecting the opinions that he decided to reject. *See generally* 20 C.F.R. § 404.1527. In particular, he considered both of the

forms completed by Dr. Shaughnessy and assigned the opinions in these forms "some weight" or "great weight" because he found them to be largely consistent with the other evidence in the record. Indeed, most of Dr. Shaughnessy's opinions were adopted as part of the ALJ's RFC assessment. As the ALJ concluded, however, Dr. Shaughnessy's opinion regarding Plaintiff's inability to work was not entitled to any special significance because it touched upon an issue that is ultimately reserved for the commissioner. *See* 20 C.F.R. § 404.1527(d)(2)-(3).

The ALJ also considered the opinions of Ms. Leipheimer, Dr. Patel, Dr. Gallo, and Dr. Rattan regarding Plaintiff's mental health impairments and discussed how much weight he was according each opinion and his reasons for doing so. Plaintiff does not directly challenge the ALJ's treatment of the opinions of these sources. He does, however, insinuate that the ALJ failed to afford appropriate weight to Dr. Gallo's opinions. That is clearly not so. The ALJ spent two full paragraphs discussing Dr. Gallo's findings before concluding that his opinion that Plaintiff could not maintain employment before was entitled to "little, if any, weight." (R. 27). The ALJ's decision to discount Dr. Gallo's opinion is supported by substantial evidence, as the question of whether a claimant can work is an issue reserved for the commissioner and, moreover, Dr. Gallo's findings were largely unsupported by the record. Finally, the ALJ appropriately afforded great weight to the findings of Dr. Rattan, the state agency consultant, since Dr. Rattan's opinions were consistent with Plaintiff's history of mild-to-moderate symptoms, which were controlled by his medications. *See* 20 C.F.R. § 404.1527(e)(2)(i) ("State agency medical and psychological consultants. . . are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings and other opinions of State agency medical and psychological consultants. . . as opinion evidence. . . .").

In sum, Plaintiff's bare re-statement of his medical history does nothing to persuade the Court that the ALJ improperly rejected limitations that were credibly established by the evidence in the record. To the contrary, the ALJ properly considered all of the evidence in the record and thoroughly discussed his reasons for rejecting some of the evidence, while crediting other pieces of evidence, before arriving at his ultimate conclusion that Plaintiff is "not disabled." His decision must be affirmed.

## IV. Conclusion

It is undeniable that Plaintiff has a number of impairments, and this Court is sympathetic and aware of the challenges which Plaintiff faces in seeking gainful employment. Under the applicable standards of review and the current state of the record, however, the Court must defer to the reasonable findings of the ALJ and his conclusion that Plaintiff is not disabled within the meaning of the Social Security Act.

For these reasons, the Court will **GRANT** the Motion for Summary Judgment filed by the Commissioner and **DENY** the Motion for Summary Judgment filed by Plaintiff. An appropriate Order follows.

McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

EUGENE EASTERLING,
        Plaintiff,

v.

CAROLYN COLVIN,
Acting Commissioner of Social Security,
        Defendant.

2:13-cv-01357

## ORDER OF COURT

**AND NOW**, this 12th day of August, 2014, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that Defendant's Motion for Summary Judgment is **GRANTED** and Plaintiff's Motion for Summary Judgment is **DENIED**. The clerk shall docket this case as **CLOSED.**

BY THE COURT:

s/ Terrence F. McVerry
United States District Judge

cc:    Kelie C. Schneider, Esq.
        Email: Kelieschneider@gmail.com

        Michael Colville, Esq.
        Email: michael.colville@usdoj.gov

        Via CM/ECF